IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUSTIN DWAYNE BLANTON, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-00765-M |
| | § | |
| COBRA ENTERPRISES OF UTAH, INC., | § | |
| Defendant. | § | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

### I.   STATEMENT OF FACTS

1.  At all times relevant herein, Cobra was and is engaged in the business of designing, manufacturing, distributing, and selling firearms, including the Cobra Derringer pistol.

2.  Cobra Derringers are designed with no trigger guard, leaving the trigger completely exposed.

3.  When the Cobra Derringer's hammer is in the neutral or "uncocked" position, the hammer rests on the firing pin, which in turn rests on the cartridge primer. This direct contact between the hammer, firing pin, and primer allows any jarring or external pressure on the hammer to be placed directly on the primer. This direct contact allows the Cobra Derringer to unexpectedly discharge when jarred without any purposeful movement of the trigger or hammer.

4.  The Cobra Derringer is designed so that the safety can only be engaged by pulling the hammer to the half-cock position. If the Cobra Derringer is dropped while in the half-cock position, the half-cock notch can shear off causing the pistol to fire unexpectedly. If the Cobra Derringer's hammer slips away from the user's thumb during cocking, the firearm can discharge unexpectedly.

5.  The Cobra Derringer is also designed such that it can be placed in a "perched," or false-

cock position. This is where the hammer sear surface is not fully engaged on the trigger sear surface. The Cobra Derringer can unexpectedly discharge from the "perched" position with little or no jarring at all.

6.  Cobra is aware of the potential safety hazards posed by its Derringer, but deliberately chooses to manufacture the pistols anyway.

7.  On August 13, 2017, 38-year-old Justin Blanton was sitting on a couch next to a duffel bag containing a Cobra Derringer. The Cobra Derringer was loaded and concealed for personal protection exactly as the pistol is designed and marketed. The duffel bag fell from the couch onto the floor and the Cobra Derringer unexpectedly discharged, sending a bullet through Mr. Blanton's right leg above his knee shattering his femur. Mr. Blanton suffered severe and disabling injuries to his right leg which required immediate and ongoing medical treatment, including multiple surgeries to implant hardware in his femur.

8.  Mr. Blanton's severe and disabling injuries have resulted in multiple surgeries, weeks in the hospital, and several months of physical therapy during which time Mr. Blanton has been unable to walk without assistance. The injuries also caused Mr. Blanton to miss roughly 6 months of work and he still suffers from residual pain every day.

9.  Plaintiff has brought three separate counts against Defendant: (1) Strict Products Liability for Design and/or Manufacturing Defect; (2) Strict Products Liability for Failure to Warn; and (3) Negligence.

## II.   PLAINTIFF IS ENTITLED TO A DEFAULT JUDGMENT AGAINST DEFENDANT ON ALL COUNTS

10.  Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment on application by a party when the defendant has failed to plead or defend the action. In evaluating a motion for entry of default judgment, all well-pled allegations of the

Complaint are deemed to be admitted. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). "A default judgment is unassailable on the merits" if it is "supported by well-pleaded allegations, assumed to be true." *Id.* Plaintiff is entitled to a default judgment against Cobra based on the well-pleaded factual allegations of the Complaint which support the relief requested.

    a. **Count I: Strict Products Liability for Design Defect**

11.    In order to recover on the theory of strict products liability, the plaintiff must prove that: "(1) the defendant placed a product into the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between such condition and the plaintiff's injuries or damages." *Houston Lighting & Power Co. v. Reynolds,* 765 S.W.2d 784, 785 (Tex.1988); *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex.1978). A product may be unreasonably dangerous due to a defect in its manufacture (manufacturing defect) or design (design defect), or because of a failure to provide adequate warnings or instructions (marketing defect). *Reynolds, supra* at 785.

12.    A manufacturer is liable on a design defect claim if "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 330 (5th Cir. 2014) (citing *Goodner v. Hyundai Motor Co.,* 650 F.3d 1034, 1040 (5th Cir.2011)); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 82.005(a). Under Texas Law, "liability for a design defect may attach even if the defect is apparent." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 383 (Tex. 1995)

13. Plaintiff alleges that Defendant designed, manufactured, and marketed the Cobra Derringer for sale to the general public. Plaintiff also alleges that he was injured in the normal and customary use of the Cobra Derringer. (ECF No. 1, p. 4-5).

14. Plaintiff further alleges that "[t]he Cobra Derringer in question was defectively designed and/or manufactured such that it was capable of discharging without a trigger pull when dropped or jarred. This defect made the Cobra Derringer unreasonably dangerous and caused the firearm not to function in a manner reasonably expected by an ordinary consumer of firearms. When Cobra designed the pistol in question, there was a safer alternative design that would have eliminated this defect. Cobra's defective design and/or manufacture of the Cobra Derringer was a producing cause of Plaintiff's injuries and damages." (ECF No. 1, p. 4-5). Plaintiff's Original Complaint also explains in detail how the Cobra Derringer is defectively designed in a way that allows it to unexpectedly discharge without a trigger pull. (*See* ECF No. 1, p. 2-3).

15. When taken as true, Plaintiff's well-pleaded facts establish Cobra's liability for design defect.

### b. Count II: Strict Products Liability and Negligence for Failure to Warn

16. Plaintiff's pleadings satisfy the predicate for strict liability by alleging that Cobra placed the Cobra Derringer into the stream of commerce in an unreasonably dangerous condition which caused plaintiff's injuries or damages. *See Reynolds, supra* at 785; *see also* (ECF No. 1, p. 4-5). Negligent failure-to-warn requires proof of: (1) a legal duty owed; (2) a breach of that duty; and (3) damages proximately by the breach. *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 663 (Tex.1999) (Baker, J. concurring).

17. Under Texas Law, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product. *Am. Tobacco Co. v. Grinnell,* 951

S.W.2d 420, 426 (Tex.1997). "A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995).

18.   "Liability will attach if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *Id.* "[T]here is no duty to warn when the risks associated with a particular product are matters within the ordinary knowledge common to the community." *Id.* However, "'Common knowledge' is an extraordinary defense that applies only when knowledge of danger is 'so patently obvious and so well known to the community generally, that there can be no question or dispute concerning [its] existence.'" *Hanus v. Texas Utilities Co.*, 71 S.W.3d 874, 880 (Tex. App.—Ft. Worth 2002, no pet.) (quoting *Grinnell, supra* at 427).

19.   Plaintiff's Complaint alleges that "Cobra knew, or in the exercise of ordinary care should have known, of the Cobra Derringer's propensity to unexpectedly discharge without pulling the trigger, yet failed to notify or adequately warn Plaintiff of the propensity, either before or after purchase of the pistol." (ECF No. 1, p. 5).

20.   Plaintiff further alleges that "[n]either Plaintiff nor the general public recognized the risks associated with the Cobra Derringer without such a warning." (ECF No. 1, p. 5).

21.   Plaintiff further alleges that "Cobra owed Plaintiff a duty to adequately warn of the defect of the Cobra Derringer prior to the sale of the product. Failure to warn Plaintiff of the risks associated with use of the Cobra Derringer was a breach of Cobra's duties to Plaintiff to provide adequate warnings, both before and after the sale and purchase of the defective product, of the dangerous conditions of the product. Cobra's failure to adequately warn of the dangerous defect in the Cobra Derringer was the proximate cause of Plaintiff's injuries and damages." (ECF No. 1,

p. 5).

22. When taken as true, Plaintiff's well-pleaded facts establish Cobra's strict liability and negligence for failing to warn of its pistol's propensity to drop-fire when carried in the "hammer down" position. Thus, the well-pleaded facts establish Cobra's liability for failure to warn.

### c. Count III: Negligence and Gross Negligence

23. Plaintiff alleges that "Defendant Cobra was negligent in the design, testing, manufacture, inspection and/or marketing of the Cobra Derringer sold to Plaintiff. Cobra knew, or in the exercise of ordinary care, should have known, that the Cobra Derringer was defective and unreasonably dangerous to those persons likely to use the pistol for the purpose and in the manner it was intended to be used, and for foreseeable misuses of the pistol. Cobra's negligence was a proximate cause of the occurrence in question and of Plaintiff's injuries and damages." (ECF No. 1, p. 6).

24. Plaintiff is not requesting a default judgment on gross negligence and punitive damages.

25. The well-pleaded facts above, taken as true, establish Cobra's liability under negligence.

### III.   DAMAGES

26. Plaintiff requests that this Court enter a default judgment for the damages requested in this Brief and accompanying Motion. Should the Court deem it necessary to hold a hearing, Plaintiff respectfully requests that the Court set this matter for an evidentiary hearing without delay so that Plaintiff may submit the required proof.

27. This Brief includes an **Appendix, Vol. 1** containing medical bills and **Appendix, Vol. 2** containing relevant portions of medical records for reasonable and necessary medical treatment provided to Plaintiff as a result of the incident in question.

28. The incident in question occurred around 10:00 p.m. on August 13, 2017. Immediately

after the gunshot, Plaintiff called 9-1-1 and was rushed to Baylor University Medical Center in Dallas, TX via CareFlight helicopter. Emergency doctors ordered x-rays and diagnosed Plaintiff with a "ballistic injury to the right lower extremity with resulting comminuted fracture of the distal third of the femoral diaphysis". *See* **Appx. at P00076.** Plaintiff's attending physicians also noted "large ballistic fragments" and "fracture fragments" inside his right leg as well as "extensive soft tissue edema throughout the right thigh as well as tracking subcutaneous emphysema". *Id.*

29.     Around 6:30 a.m. the next morning, Plaintiff was placed under general anesthesia and underwent a retrograde intramedullary nailing of the right femur. *See* **Appx. at P00356-357.** This procedure consisted of inserting a rod the length of Plaintiff's femur secured by 2 screws at each end. Plaintiff was discharged on August 15, 2017 and sent to a rehabilitation facility. **Appx. at P00958.** Plaintiff was prescribed Tylenol #3 for pain and told he could supplement with other NSAIDs between doses as needed.

30.     At some point during the following weeks, Plaintiff heard a "pop" in his right leg and developed severe and persistent pain near his knee. **Appx. at P00958.** The persistent pain was so severe that Plaintiff was taking the maximum daily dosage of Tylenol #3 and supplementing with acetaminophen between doses. *Id.*

31.     On September 24, 2017, Plaintiff was in extreme pain and had been nauseous, vomiting, and unable to eat for three days. **Appx. at P01083.** Plaintiff went to the emergency department at Ennis Regional Medical Center where it was determined that one of the screws holding the femoral rod in place had broken causing the rod to fall and protrude through the bottom of the femur into the knee joint. **Appx. at 01090, 00958.** Plaintiff was then transferred by ambulance to Baylor University Medical Center where the hardware malfunction was confirmed. Plaintiff was

also diagnosed with acute liver failure from Tylenol toxicity as a result of attempting to relieve the severe pain. **Appx. at 00958.** On September 27, 2017, Plaintiff underwent another surgical procedure to replace the broken screw and correct the femoral rod. **Appx. at P00960.**

32. Plaintiff is uninsured and does not receive Medicare or Medicaid. Plaintiff's "paid or incurred" medical expenses total $136,341.98. Plaintiff still experiences persistent pain and physical limitations with his right leg. The attached photos show the unsightly scarring which entitles Plaintiff to an award for permanent disfigurement. Plaintiff previously worked as an air conditioning technician which regularly required him to ascend and descend stairs and ladders. Plaintiff has not been able to return to work since the accident.

33. Plaintiff respectfully requests an award of **$2,136,341.98**, which is within the range of awards for similar injuries. In a recent case in Denton County, Texas, the plaintiff in a car wreck suffered a fractured femur and a concussion. The judge in a bench trial awarded the plaintiff $1,250,000. *Stewart v. Rosandich*, January 1, 2018, in the 442nd Judicial District Court of Denton County, Texas.

34. Based on Plaintiff's well-pleaded facts and the evidence attached hereto, Plaintiff has shown that he is entitled to the relief sought in this Motion and Brief.

## IV.   CONCLUSION

Plaintiff respectfully submits that he is entitled to a default judgment against Defendant Cobra Enterprises of Utah, Inc. as requested in the Motion which this Brief supports.

    Respectfully submitted,

    CHAFFIN & HOMAN

    /s/ Nicholas A. Homan
    Nicholas A. Homan
    Texas Bar No. 24083194

S. Dist. TX Bar No. 2782996
nick@chaffinlawfirm.com
4265 San Felipe, Ste. 1020
Houston TX 77027
713-528-1000
713-952-5972/Fax

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served to all parties via **ECF transmission** on this 3rd day of June, 2019.

Respectfully submitted,

/s/ Nicholas A. Homan
Nicholas A. Homan